**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| TIMOTHY RYAN,<br><br>              Plaintiff,<br><br>       v.<br><br>R. ROBINSON, *et al.*,<br><br>              Defendants. | Civil Action No. 22-1175 (RMB-MJS)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

      **THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Federal Bureau of Prisons ("BOP") officials and employees ("Individual Defendants") and the United States Government (the "Government") (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).  [Docket No. 70.]  Having considered the parties' submissions, the Court resolves the Motion without oral argument.  FED. R. CIV. P. 78(b); D.N.J. LOC. CIV. R. 78.1(b).  For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED IN PART**.

I.     **BACKGROUND**

      Plaintiff Timothy Ryan ("Plaintiff") is a federal prisoner incarcerated at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix").  On March 4, 2022, Plaintiff filed a *pro se* Complaint against Individual Defendants R. Robinson, T. Jones, and M. Castellanos alleging that he contracted COVID-19 and suffered other related harms because Individual Defendants prohibited him from moving to a safer, open bunk.  *See* [Docket No. 1, at 3–4 ("Compl.").]  Plaintiff also claimed that Defendants refused to properly

handle his outbound legal correspondence.  *See* [*id.*, at 4.]  The Court thereafter granted Plaintiff's application to proceed *in forma pauperis* ("IFP") following its *sua sponte* responsibility to screen prisoner complaints under the Prison Litigation Reform Act ("PLRA").[1]  [Docket Nos. 3–4].

On June 12, 2023, the Court granted Plaintiff's request to add new claims for personal injury and denial of medical care.  [Docket Nos. 12–13.]  Plaintiff filed an opaque Amended Complaint the following month, naming additional BOP employees Stevie M. Knight, J. Petrucci, Carl Sceusa, Ravi Sood, Nicoletta Turner-Foster, and BOP Director John Doe as Defendants.  *See* [Docket No. 14 ("Am. Compl.").]  The Amended Complaint, as the Court understood it, set forth First and Eighth Amendment claims for equitable relief as well as money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics* ("*Bivens*"), 403 U.S. 388 (1971).  *See* [*id.*]  Plaintiff also brought claims under the Federal Tort Claims Act ("FTCA", or the "Act") but did not name the Government as a Defendant.  *See* [*id.*]

Following the briefing, Plaintiff filed three self-styled motions that collectively raised new claims concerning his food allergies and religious diet, seeking emergency declaratory and injunctive relief, including release from BOP custody or, alternatively, a specialized kosher, organic, and allergen- and cruelty-free diet in the form of sealed foods served outside the FCI Fort Dix Dining Hall.  *See* [Docket Nos. 39, 41–42.]  Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Docket No. 33.]

---

[1] After informing him that his original IFP application was deficient, the Court granted Plaintiff's second, complete IFP application.  [Docket No. 2.]

On December 17, 2024, the Court granted in part Defendants' first motion to dismiss and denied Plaintiff's three motions for emergency declaratory and injunctive relief. [Docket Nos. 43–44.]  As to Defendants' motion, the Court dismissed Plaintiff's *Bivens* claims with prejudice, his FTCA claims without prejudice for not naming the Government as a defendant, but reserved the issue of whether Plaintiff failed to administratively exhaust his Eighth Amendment equitable relief claims, as required under the PLRA, for subsequent findings of fact. [Docket No. 44, at 1.]  With respect to Plaintiff's three motions, the Court denied them for raising new claims which the Court could not clearly comprehend, thus preventing judicial review on irreparability.[2]  [Docket No. 43, at 13–14.]

To address these combined issues, the Court granted Plaintiff leave to file a second amended complaint and ordered him to file, within 30 days, a submission not to exceed 3 pages clarifying the claims and defendants alleged in the Amended Complaint.  [Docket No. 44, at 1.]  Defendants, in turn, would have 45 days to file a responsive submission.  [*Id.*]  In consideration of Plaintiff's alleged emergent health complications, the Court also ordered Defendants to file a submission within 10 days advising that Plaintiff's medical needs were being addressed.  [*Id.*, at 2.]

Defendants satisfactorily complied with the latter directive concerning Plaintiff's medical condition and the care provided.  *See* [Docket No. 45.]  On January 22, 2025, Plaintiff filed a Second Amended Complaint, adding the Government, Food Service Administrator Ardoline, Assistant Food Service Administrator Michael Marchese, Warden Rachael Thompson, Associate Warden Matthew DeMercurio, Medical Director F. Ahmedi, Regional

---

[2] Embedded in the three motions were requests for the appointment of *pro bono* counsel for the new claims asserted, which the Court denied without prejudice.  [Docket No. 43, at 2–3.]

Director Amy Boncher, and John Doe Regional Administrative Remedy Coordinator as Defendants.[3]  *See* [Docket No. 46 ("Second Am. Compl.").]  In the Second Amended Complaint, Plaintiff re-alleges that he is presently starving, losing significant weight, and experiencing allergic reactions of vomiting, bleeding, and anaphylaxis caused by the BOP's failure to provide him an allergen-free, religiously-obedient diet.  [*Id.*, ¶ 5.]  Soon thereafter, Plaintiff filed a Motion to Request Copy of the Docket Sheet and to Reconsider Denial of Injunctive Relief [Docket No. 49], the latter of which the Court construed as seeking a temporary restraining order with respect to the new nutrition- and diet-based claims in the Second Amended Complaint [Docket No. 52, at 1 n.1].

After review, the Court denied Plaintiff's request for temporary injunctive relief,[4] but ordered Defendants to supplement their prior filing about their efforts to meet Plaintiff's medical needs with a submission detailing their efforts to provide Plaintiff adequate nutrition considering his food allergies and religious diet.  [*Id.*, at 4.]  Specifically, if Plaintiff had requested or received any medical treatment for allergies or inadequate nutrition in the last 60 days, Defendants were to submit those records under seal, and if warranted, the Court would reconsider Plaintiff's request for a TRO.  [*Id.*]

Defendants timely complied with the Court's order to file a supplemental statement concerning Plaintiff's recent medical history.  [Docket No. 53.]  Then, Plaintiff filed a request for the appointment of *pro bono* counsel and a preliminary injunction to provide religiously-adherent, allergen-free foods specified by himself, or to be fully released from BOP custody.

---

[3] The Defendants provide the correct titles and name spelling of their names in their brief in support of the instant Motion.  [Docket No. 70-1, at 4 nn.3–4 ("Defs.' Br.").]

[4] The Court granted Plaintiff's request for a copy of the docket sheet.  [Docket No. 52, at 4.]

*See* [Docket Nos. 64, 66.]  Thus seeking to alter, not simply maintain, the status quo, the Court reserved ruling on these requests and ordered Defendants to file under a seal a third submission advising how Plaintiff's dietary and medical needs are being addressed, making sure to include any associated medical request slips or medical records from the last 60 days. [Docket No. 67, at 2–3.]  Plaintiff could then offer a response once submitted.  [*Id.*, at 3.]

On September 18, 2025, Defendants complied, filing the requested material under seal. [Docket No. 69.]  Plaintiff filed his response shortly thereafter.  [Docket No. 74.]  As before, the Court is satisfied that Plaintiff is in no real danger regarding his health and that his needs are being addressed.  After being granted an extension of time to respond to the Second Amended Complaint in the meanwhile, Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).  [Docket Nos. 65, 67, 70.]  The Motion is fully briefed and ripe for review.  [Defs.' Br., Docket No. 75 (Pl.'s Opp. Br.").]

## II.   STANDARD OF REVIEW

### A.  12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack."  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016); *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis*, 824 F.3d at 346 (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  The latter, a factual challenge, "attacks the factual allegations underlying the complaint's assertion of jurisdiction,

either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Davis*, 824 F.3d at 346 (quoting *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

In contrast to a facial challenge, a factual attack allows "a court [to] weigh and consider evidence outside the pleadings." *Aichele*, 757 F.3d at 358 (internal quotation marks omitted); *see Torres v. United States*, No. 19-16395, 2019 WL 7343494, at *2 (D.N.J. Dec. 31, 2019) (citing *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)) ("Unlike with a facial attack, in a factual attack, 'the court may consider evidence outside the pleadings to satisfy itself of its power to hear the case.'"). "Unlike a facial analysis, no presumption of truth attaches to a plaintiff's allegations in a factual challenge and 'the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Liu v. Lu*, No. CV 23-3819 (MAS) (RLS), 2024 WL 2750817, at *3 (D.N.J. May 29, 2024) (quoting *Mortensen*, 549 F.2d at 891). Whichever sortie is launched, the plaintiff bears the burden of persuasion when confronted with a subject matter jurisdiction challenge under Rule 12(b)(1). *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

## B. 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A party may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *id.* at 570). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

When considering a 12(b)(6) motion to dismiss, a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 350–51 (3d Cir. 2005) (internal citations omitted). "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)). The proper role of the district court in reviewing the sufficiency of a complaint is thus limited: the issue is not "whether the plaintiffs will ultimately prevail" but "whether they are entitled to offer evidence to support their claims." *Langford v. City of Atl. City*, 235 F.3d 845, 847 (3d Cir. 2000). "When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis*, 824 F.3d at 349 (citation omitted).

Whether under Rule 12(b)(1) or (6), the Court will liberally construe Plaintiff's pleadings, "however inartfully pleaded". *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). Nevertheless, even *pro se* litigants must "still must allege sufficient facts in their complaints to support a claim." *Owens v. Armstrong*, 171 F. Supp. 3d 316, 328 (D.N.J. 2016) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). Plaintiff is not exempt, in other words, from complying with federal pleading standards. *See Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

## III.    DISCUSSION

The Second Amended Complaint is denominated into six paragraphs. At the behest of Defendants, the Court construed the Second Amended Complaint to allege FTCA claims

in paragraphs 1, 2, 3, 4, and 6. [Docket No. 51; Second Am. Compl., ¶¶ 1–4, 6.] In paragraph 5, Plaintiff sets forth claims under *Bivens*, the FTCA, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and claims for declaratory and equitable relief. [Second Am. Compl., ¶ 5.] The *Bivens* claims are asserted against Defendants Ardoline, Marchese, Thompson, DeMercurio, Ahmedi, Sood, Boncher, and Regional Administrative Remedy Coordinator Doe. [*Id.*] Defendants variably move to dismiss these claims. *See* [Defs.' Br.] The Court shall review, as best it can, the Second Amended Complaint alongside Plaintiff's other relevant pleadings to liberally discern what claims are asserted and factual support marshalled and whether they survive Defendants' request for dismissal. Some hornbook FTCA law to start, then, a claim-by-claim review, excepting that relating to Plaintiff's allergies and religious diet, which the Court will separately address given its preponderance.

### A. The Federal Tort Claims Act

The FTCA "is the exclusive remedy against the United States for tort claims arising out of the wrongful acts of Government employees acting within the scope of their employment." *Lichtman v. United States*, 316 F. App'x 116, 120 (3d Cir. 2008). The Act "waives sovereign immunity and grants district courts jurisdiction over tort claims against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Gould Elecs. Inc.*, 220 F.3d at 179 (emphasis omitted) (quoting 28 U.S.C. § 1346(b)(1)). This waiver of sovereign immunity is limited though. "Because the Federal Tort Claims Act constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed." *Livera v. First Nat'l State Bank of N.J.*, 879 F.2d 1186, 1194 (3d

8

Cir. 1989); *see United States v. Kubrick*, 444 U.S. 111, 117–18 (1979) ("[W]e should not take it upon ourselves to extend the waiver beyond that which Congress intended.").

An FTCA claim is actionable if it alleges the six elements of § 1346(b), which are that the claim be:

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Brownback v. King*, 592 U.S. 209, 212 (2021) (quoting *FDIC v. Meyer*, 510 U.S. 471, 477 (1994)).

Apart from this there are several procedural hurdles that must be jumped in order to bring an FTCA claim. Specifically, the Act "provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." *McNeil v. United States*, 508 U.S. 106, 107 (1993) (quoting 28 U.S.C. § 2675(a)). To do so, a plaintiff suing under the FTCA must present the offending agency, which here would be the BOP, with adequate notice of the claim, including a "sum certain" demand for monetary damages. *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 457 (3d Cir. 2010). Exhaustion occurs when either the agency denies the claim or six months have passed without a written denial thereof. 28 U.S.C. § 2675(a). "This requirement is jurisdictional and cannot be waived." *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015); *Lightfoot v. United States*, 564 F.3d 625, 626 (3d Cir. 2009). The exhaustion requirement applies to all FTCA plaintiffs regardless of their *pro se* or incarcerated status. *Shelton*, 775 F.3d at 569; *Wadhwa v. Nicholson*, 367 F. App'x 322, 325 n.5 (3d Cir. 2010).

9

### 1.  The BOP's Alleged Refusal to Provide Plaintiff a CPAP Machine

"Due to refusals for treatment, delays in treatment, and faulty tests," Plaintiff allegedly "suffered 7.5 years without [a] needed CPAP [continuous positive airway pressure] machine, thus suffocating in his sleep, suffering severe insomnia, daytime somnolence, weakened immune system, depression, feelings of helplessness, and fear of dying in his sleep." [Second Am. Compl., ¶ 1.]  Plaintiff seeks $27,365,000 in monetary damages, or $10,000 for every CPAP-less day he suffered from May 1, 2017, to November 21, 2024.[5]  [*Id.*]  The Government brings first a factual attack on this Court's jurisdiction, arguing that Plaintiff has not administratively exhausted this claim.  [Defs. Br., at 8]; *see Campbell v. United States*, No. 24-CV-5642 (EP) (CLW), 2025 WL 1527463, at *2 (D.N.J. May 29, 2025) (citing *Medina v. City of Philadelphia*, 219 F. App'x 169, 172 (3d Cir. 2007)) ("Because the United States is challenging Plaintiff's compliance with a jurisdictional [prere]quisite [under the FTCA] (administrative exhaustion), this is a factual attack.").

After reviewing the BOP's Northeast Regional Office's computerized index storing Plaintiff's administrative tort claims, the Government attests that it "has no record of Plaintiff submitting an SF-95 tort claim" for this issue.  [Defs.' Br., at 8 (citing Docket No. 70-2, ¶¶ 3–4 ("Dobovich Decl."))].  Plaintiff, in response, provides a completed SF-95 form complaining about his neglected need for a CPAP machine, which he purportedly "submitted … on or about" February 20, 2023.  [Pl.'s Opp. Br., ¶ 2 & Ex. A.]  Plaintiff's ostensible mailing of the

---

[5] According to the asserted chronology, Plaintiff went 2,762 days without the CPAP machine, which, at a $10,000 daily rate, would amount to $27,620,000 in damages.  Plaintiff may very well seek damages equal to or lesser than the "sum certain" requested at the administrative level, but, "[b]y the terms of the statute, damages are capped at the amount set forth in the administrative claim presented to the agency, that is, the SF-95 filed by" Plaintiff."  *Salas v. United States*, No. CV 16-2485 (SRC), 2021 WL 82268, at *5 (D.N.J. Jan. 11, 2021) (citing 28 U.S.C. § 2675(b)).

SF-95 form on February 20, 2023, does not carry his jurisdictional burden of showing that he properly presented the administrative tort claim to the BOP.

Specifically, Plaintiff's *de facto* reliance on the mailbox rule does not satisfy what is known as the FTCA's "presentment" requirement. "In order to satisfy the presentment requirement, a plaintiff must demonstrate that the appropriate federal agency ***actually received*** the claim." *McKay v. United States*, No. 24-CV-9863 (SRC), 2025 WL 624448, at *3 (D.N.J. Feb. 26, 2025) (emphasis in original) (quoting *Medina*, 219 F. App'x at 172); *see also* 28 C.F.R. § 14.2(a) (emphasis added) ("For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency *receives* from a claimant … an executed Standard Form 95 or other written notification of an incident[.]"). Demonstrating an agency's receipt of a claim is "not an onerous requirement, as proof of receipt can easily be obtained by sending a claim by certified mail or by registered mail, or by obtaining acknowledgment of receipt from the agency itself." *Medina*, 219 F. App'x at 172–73.

The Third Circuit "expressly held" in *Lightfoot v. United States*, 564 F.3d 625, 627–28 (3d Cir. 2009), "that mere mailing of a claim will not satisfy an FTCA plaintiff's burden of demonstrating that the claim has been presented to the appropriate agency, within the meaning of 28 U.S.C. § 2675(a)." *Vargas v. Eckhardt*, No. CV 18-12803 (SRC), 2018 WL 4676050, at *4 (D.N.J. Sept. 28, 2018); *see McKay*, 2025 WL 624448, at *3; *Freeman v. Lincalis*, 158 F.4th 166, 176 (3d. Cir. 2025) ("[W]e have held that a plaintiff must generally provide affirmative evidence of receipt … where the government brought a factual jurisdictional challenge, proffering at least some affirmative evidence of non-receipt.").

Here, Plaintiff "merely provide[s] a copy of the" SF-95 form "allegedly sent on" February 20, 2023, "but provide[s] no registered or certified mail receipt of the letter or acknowledgment by the" BOP. *McKay*, 2025 WL 624448, at *3; *see* [Pl.'s Opp. Br.] Consequently, Plaintiff has not persuaded this Court of its jurisdiction over this claim at this juncture, which shall be accordingly dismissed without prejudice. *See McKay*, 2025 WL 624448, at *3 ("[D]istrict courts in this jurisdiction have routinely dismissed FTCA claims absent proof that an administrative claim was actually received by a federal agency by either proof of receipt by certified or registered mail or acknowledgment of the claim by the federal agency.") (collecting cases); *N.J. Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 n.8 (3d Cir. 2011) (explaining that dismissals for lack of subject matter jurisdiction are "by definition without prejudice").

## 2.  The BOP's Alleged Failure to Treat Plaintiff's Hand

On January 9, 2022, "while assisting [a]n elderly inmate orderly … carry … [a] faulty 15 gallon chemical jug (full) with a broken handle, it slipped from [Plaintiff's] grip and crushed [his] hand on the stairs." [Dobovich Decl., Ex. 2, at 1.] This allegedly "resulted in contusions and snapped [Plaintiff's] extensor tendon [i]n [his] dominant hand's pinky". [*Id.*] Plaintiff claims that a "lack of medical care after" caused him "permanent deformity, chronic aches[,] and difficulty with many basic tasks".[6] [*Id.*] Upon review of the SF-95 form, the BOP denied

---

[6] Plaintiff intimates that it is the sole fact that he "came into contact with" the faulty jug, and not the subsequent medical care, that gives raise to the claim. [Pl.'s Opp. Br., at 8).] How Plaintiff's admittedly *volitional* decision to assist an elderly inmate carry an allegedly defective jug without BOP participation possibly gives raise to governmental tort liability is mystifying. Indeed, the inmate orderly specifically attests that "nobody was assigned to help me." [*Id.*, Ex. D, at 1.] Whatever duties, if any, the Government may have owed to that inmate in the exercise of his assignment are for that inmate to litigate, not Plaintiff. So understood, severing Plaintiff's allegedly deficient medical care thereafter at the hands of the BOP makes very little sense in constructing the claim.

12

Plaintiff's claim on December 27, 2023.  [Dobovich Decl., Ex. 3.]  The Government does not protest administrative exhaustion, therefore, but that Plaintiff has not set forth sufficient factual matter to sustain his claim.  [Defs.' Br., at 22–23.]

The FTCA "does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court.  Accordingly, the extent of the United States' liability under the FTCA is generally determined by reference to state law."[7]  *Lomando v. United States*, 667 F.3d 363, 372–73 (3d Cir. 2011) (citations and quotation marks omitted).  The Court therefore surmises that Plaintiff is asserting a medical malpractice claim under New Jersey law.  *See Scott v. Manenti*, 781 F. App'x 65, 68 (3d Cir. 2019) (citation omitted) ("FTCA claims are generally governed by the substantive tort law of the state where the acts or omissions occurred.").  Putting aside this Court's exercise of supplemental jurisdiction, to establish a New Jersey medical malpractice claim "a plaintiff must demonstrate: (1) the existence of a duty owed by the federal employee or agent; (2) a breach of that duty; (3) proximate causation linking the breach to the plaintiff's injury; and (4) actual damages."  *Maher v. United States*, No. 19-CV-9060 (RMB), 2025 WL 2463253, at *5 (D.N.J. Aug. 27, 2025) (citing *Polzo v. Cnty. of Essex*, 196 N.J. 569, 584 (2008)).

After review, the Court finds Plaintiff's claim too vague and conclusory to proceed.  In his Amended Complaint,[8] Plaintiff states the following:

---

[7] To the extent Plaintiff alleges "a violation of his constitutional rights, constitutional torts are not cognizable under the FTCA."  *Zierke v. United States*, 679 F. App'x 103, 106 (3d Cir. 2017) (citing *Meyer*, 510 U.S. at 477–78).

[8] The original Complaint and Second Amended Complaint do not add much in the way of factual matter for this claim.  *See* [Compl.; Second Am. Compl.]  On a related note, as this Court previously advised Plaintiff, the unexplained references to the miscellany of attached exhibits to

13

> True to their deliberately indifferent nature, medical staff did not treat movant for this injury. Movant was not x-rayed and given a splint for 2 days and not seen by an orthopedic surgeon for months, which was a farcical video visit. No treatment has ever been given other than ineffective NSAID [nonsteroidal anti-inflammatory drugs] pain relievers ….

[Am. Compl., at 10.] What is immediately deficient is Plaintiff's failure to provide "the identities of the treatment providers", simply referring to anonymous "medical staff". *See Corral v. United States*, No. CIV.A. 12-6220 JBS, 2013 WL 4540919, at *3 (D.N.J. Aug. 27, 2013) (dismissing New Jersey medical malpractice claim for, *inter alia*, not naming medical personnel involved). And even if the Court assumes them to be Individual Defendants Drs. Sood, Sceusa, and Turner-Foster, such largesse does not plausibly clarify each doctor's role in the putative malpractice, let alone how their supposed departures from their respective standards of care proximately caused Plaintiff's injury—a natural consequence of course of only naming unidentified "medical staff" as tortfeasors. This besides, there are no "dates of the treatments [or attempts to receive care]". *Corral*, 2013 WL 4540919, at *3. Other than Plaintiff's purported injury occurring on January 9, 2022, and him signing the SF-95 form on July 29, 2022, there is nothing from which the Court could reasonably infer a chronology within this seven-month window. *See* [Am. Compl., at 10; Dobovich Decl., Ex. 2, at 1.]

The claim is furthermore elusively contradictory. Plaintiff alleges that "[n]o treatment has ever been given other than" pain relievers, but implies only one sentence before that he was x-rayed, given a splint, and evaluated by an orthopedic surgeon, whose "farcicality" is not explained at all, nor are the results of the x-ray discussed, which one would think relevant

---

the Amended Complaint are not legally sufficient to state claim. *See* [Docket No. 43, at 3.] Plaintiff's entitlement to liberal construction does not transmogrify the Court into a truffle pig.

14

and integral to a claim such as this.[9]  *See* [Am. Compl., at 10]; *see also* [Pl.'s Opp. Br., at 8 (vaguely alleging medical treatment received was "not adequate").

Assuming, *arguendo*, the Court could make sense of the claim, the BOP's denial letter imparts what would otherwise appear a proper course of treatment that is not contradicted by Plaintiff's pleading deficiencies.  According to the BOP, medical staff evaluated Plaintiff on January 10, 2022, a mere day after the alleged injury.  [Dobovich Decl., Ex. 3.]  He was then prescribed pain medication, and the ordered x-rays "revealed no fracture or malalignment." [*Id.*]  Plaintiff then visited the orthopedic surgeon on April 12, 2022, who reported "no fracture or significant damage" and advised Plaintiff to "work on mobilization exercises in [his] finger."  [*Id.*]  Medical staff even "continued to evaluate" Plaintiff's hand, finding "no evidence of continuing injury to [his] finger."  [*Id.*]  All this is to say that Plaintiff's conclusory and contradictory allegations, in tandem with the administrative record at hand, portray a mere disagreement with the chosen course of treatment, which would not adequately state a claim of negligence under New Jersey law.[10]  *See Maher v. United States*, No. 19-CV-9060 (RMB), 2025 WL 2463253, at *5 (D.N.J. Aug. 27, 2025) (citing *Schueler v. Strelinger*, 43 N.J. 330, 344 (1964)).  The Court will therefore dismiss this claim without prejudice.[11]  *See*

---

[9] For the same reasons, dismissal would still be warranted if the Court were to construe the claim as one of ordinary negligence.  *See Brown v. United States*, No. CV 15-7734 (RMB/JS), 2017 WL 1064665, at *4 (D.N.J. Mar. 21, 2017) ("A medical malpractice case is a kind of tort action in which the traditional negligence elements are refined to reflect the professional setting of a physician-patient relationship.").

[10] The Court is careful to note that this is hypothecation on its part.  A finding of a non-cognizable disagreement would only necessarily arise if Plaintiff had sufficiently pleaded the predicate elements of a medical malpractice in the first place, which he has not.

[11] Because the Court dismisses the claim on this basis, there is no imperative to address whether dismissal is also warranted in light of *Berk v. Choy*, 607 U.S. ----, 2026 WL 135974 (2026).  A plaintiff alleging a New Jersey medical malpractice claim typically must submit, absent limited exceptions, an affidavit of merit within 60 or 120 days, or risk dismissal with prejudice.  *See, e.g.,*

*Brownback*, 592 U.S. at 217 ("[I]n the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional."); *N.J. Physicians, Inc.*, 653 F.3d at 241 n.8.

### 3. Plaintiff's Alleged Multiple Contractions of COVID-19

"Due to the BOP's mishandling of the COVID-19 pandemic and deliberate indifference of" Individual Defendants R. Robinson, T. Jones, and M. Castellanos "actively preventing Plaintiff from social distancing by preventing him from moving to an open bed in the corner of the same room, Plaintiff suffered constant exposure to and infections of COVID-19." [Second Am. Compl., ¶ 3 (cleaned up).] Allegedly, this resulted in an array of physical and psychological harms necessitating $797,000 in damages. [*Id.*] The Government argues threefold: (1) the claim is time-barred; (2) the discretionary function exception applies; and (3) Plaintiff fails to adequately plead causation. [Defs.' Br., at 8–9, 14–16, 23.] Although atypical, as it is an affirmative defense,[12] the Court will start with the FTCA's statute of

---

*Brown*, 2017 WL 1064665, at *4 –*5; N.J. STAT. ANN. § 2A:53A-29. In *Berk*, the Supreme Court held that Delaware's affidavit of merit statute conflicts with Federal Rule of Civil Procedure 8 and therefore does not apply in federal court. *Berk*, 2026 WL 135974, at *4–*6. The Court need not at this time determine if New Jersey's analogous statute is similarly inapplicable.

[12] The Government mistakenly characterizes this defect as one of administrative exhaustion, and therefore as jurisdictional. [Defs.' Br., at 8–9.] Section 2401(b) is neither, but rather a non-jurisdictional time bar. *Knapp v. United States*, No. 21-1523, 2022 WL 3657184, at *4 (3d Cir. Aug. 25, 2022) (citing *United States v. Wong*, 575 U.S. 402, 405 (2015)). And while this would typically limit 12(b)(6) scrutiny to the face of the pleadings, courts routinely consider administrative records, such as SF-95 forms, appended to motions to dismiss when ruling on whether a FTCA claim is time-barred. *See, e.g.*, *Hunt v. U.S. Dep't of Veterans Affs.*, No. CV 18-9443 (KM/JBC), 2019 WL 1236835, at *4–*5 & nn.1–2 (D.N.J. Mar. 14, 2019) (first quoting *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017); and then citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (recognizing statute of limitations as affirmative defense typically established on "face of the complaint" but observing that Rule 12(b)(6) encompasses "document[s] integral to or explicitly relied upon in the complaint"); *Gillie v. Esposito*, No. CV 14-3704 (JBS-JS), 2018 WL 6499864, at *4 n.1 (D.N.J. Dec. 11, 2018) (same); *see also Est. of Roman v. City of Newark*, 914 F.3d 789, 796–97 (3d Cir. 2019) (cleaned up) ("We can also consider documents that a defendant attaches as an exhibit to a motion to dismiss if they are 'undisputedly authentic' and the plaintiff's claims are based on them.").

limitations to demonstrate the vagueness of Plaintiff's allegations that fatally bleed throughout the claim.

### a. The Statute of Limitations

Under the FTCA, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). "The determination of when a claim accrues for the purposes of the FTCA is a question of federal law." *Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266, 271 (3d Cir. 2006) (citing *Tyminski v. United States*, 481 F.2d 257, 262–63 (3d Cir. 1973)); *Green v. United States*, 180 F. App'x 310, 312 (3d Cir. 2006). "Normally, a tort claim accrues at the time of injury."[13] *Miller*, 463 F.3d at 271 (citation omitted).

The BOP received Plaintiff's SF-95 form on July 17, 2023. [Dobovich Decl., ¶ 6 & Ex. 4, at 1.] Plaintiff's "time of injury", or, in this case, his contracting COVID-19, must have occurred "within two years" before. 28 U.S.C. § 2401(b). But the SF-95 form reveals that Plaintiff contracted the virus on October 6, 2020. [Dobovich Decl., Ex. 4, at 1.] And even if the Court considers the contraction date of December 22, 2020, as pleaded in the original Complaint, each fall well without the two-year presentment window required by the FTCA. [Compl., at 3.] However, the BOP's own denial letter, appended to the Government's Motion, states that Plaintiff "tested positive for COVID-19 on January 22, 2022", within the two-year window. [Dobovich Decl., Ex. 5.] The Government ignores this date in its briefing. *See* [Defs.' Br., at 8–9.] Without the benefit of briefing by either party on how to apply the

---

[13] The Court does not construe this claim as one of medical malpractice, whereby "accrual occurs when 'the putative plaintiff possesses facts which would enable 'a reasonable person to discover the alleged malpractice.'" *Green*, 180 F. App'x at 312 (quoting *Hughes v. United States*, 263 F.3d 272, 275 (3d Cir. 2001)); *see Kubrick*, 444 U.S. at 119–22. Nor does Plaintiff contend otherwise. *See* [Pl.'s Opp. Br., at 2–3.]

FTCA's statute of limitations in the event of multiple times of injury, especially when the BOP appears to have evaluated the administrative claim upon a statutorily-compliant date, the Court is reluctant to find that the Government has shouldered its burden to show the claim time-barred at this time.[14]

### b. Causation

Plaintiff's alleged multiple contraction dates, while perhaps unsuitable for the statute of limitations, do demonstrate, as the Government alternatively argues, that he has not plausibly pleaded that Individual Defendants' inactions caused him to contract COVID-19. [Defs.' Br., at 23.] The Court once again presumes that Plaintiff sets forth New Jersey torts of negligence and gross negligence. *Lomando*, 667 F.3d at 372–73; *Scott*, 781 F. App'x at 68. "The elements of a negligence and gross negligence claim under New Jersey law are the same but very in degree: (1) duty of care; (2) breach of that duty; (3) proximate cause; and (4) actual damages." *Lackner v. United States*, No. CV 22-4951 (RMB-AMD), 2025 WL 314965, at *7 (D.N.J. Jan. 28, 2025). A "proximate cause" produces the complained of result, unbroken by an intervening cause. *Bond v. Solvay Specialty Polymers, USA, LLC*, 583 F. Supp. 3d 643, 650–51 (D.N.J. 2022) (citing *Broach-Butts v. Therapeutic Alternatives, Inc.*, 191 A.3d 702, 711 (N.J. Super. Ct. App. 2018)). Proximate cause is typically a jury issue but can be decided on a motion to dismiss if "no reasonable jury could find that the Plaintiff's injuries were not proximately caused" in the manner alleged by the plaintiff. *Id.* (quoting *Broach-Butts*, 191

---

[14] This obviates the Court's need to address at length Plaintiff's strained contention of a distinction between *exposure to* and *contraction of* the virus, such that his alleged present exposure renders his claim timely. [Pl.'s Opp. Br., at 2.] This is casuistical artifice that would effectively nullify the FTCA's statute of limitations. How does mere "exposure" to the coronavirus result in the physical and related harms Plaintiff asserts as the basis of his FTCA claim? It does not, obviously.

A.3d at 711).  If there are contributing causes of the alleged injury, a plaintiff must show negligence was a "substantial factor" contributing to the result.  *Id.* (cleaned up).

To start, there are no allegations as to the purported contractions on October 6, 2020, or January 22, 2022, from which a reasonable jury could find proximate causation.  *See* [Compl., Am. Compl., Second Am. Compl.]  The Court can therefore narrow its focus to December 22, 2020.  Plaintiff allegedly "request[ed] to move to an open bed in [his] cell to allow for social distancing during [the] COVID outbreak" on November 20, 21, 30 and December 2 and 10, 2020.  [Compl., at 3.]  Even if the Court inferentially assumes that Individual Defendants housed Plaintiff with sick inmates from which he sought to distance himself—an allegation that Plaintiff does not explicitly aver[15]—his "causation theory is too speculative."  *Lackner*, 2025 WL 314965, at *7.  The intervening *12* days between Plaintiff's latest request and his contraction are unaccounted for.  *See* [Compl., Am. Compl., Second Am. Compl.]  As this Court has noted hitherto, "[t]here are many potential intervening causes with a highly transmissible virus, and it would be virtually impossible to determine the cause." *Lackner*, 2025 WL 314965, at *7 (dismissing COVID-19-exposure claim under FTCA because 21-day intervening period was too speculative to demonstrate proximate causation). Consequently, the Court will dismiss without prejudice Plaintiff's FTCA claim concerning the alleged negligent exposure to COVID-19.  *Brownback*, 592 U.S. at 217; *N.J. Physicians, Inc.*, 653 F.3d at 241 n.8.

---

[15] Plaintiff does allege that he had "to sleep in an area surrounded by COVID[-]positive … persons," but vaguely claims that it "resulted in [his] *second* contraction of COVID-19."  [Am. Compl., at 3 (emphasis added).]  There is no telling from the pleadings what number contraction to assign to that of December 22, 2020.  *See* [Compl., Am. Compl., Second Am. Compl.]

19

### c.  Discretionary Function Exception

Even if Plaintiff adequately alleged causation, the discretionary function exception would also preclude jurisdiction under the FTCA.  The FTCA waiver is subject to a number of exceptions, such as the discretionary function exception.  *See* 28 U.S.C. § 2680(a); *Xi v. Haugen*, 68 F.4th 824, 837 (3d Cir. 2023).  Under the discretionary function exception, the United States retains sovereign immunity for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion involved be abused."  28 U.S.C. § 2680(a); *see United States v. S.A. Empresa de Viacao Aerea Rio Grandense  (Varig Airlines)*, 467 U.S. 797, 808 (1984) ("The discretionary function exception … marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.").

In *United States v. Gaubert*, 499 U.S. 315 (1991), the Supreme Court established a two-part test for determining whether the discretionary function should apply.  "First, a court must determine whether the act involves an element of judgment or choice."  *Id.* at 322.  If the answer is yes, the court then must ask, "whether that judgment is of the kind that the discretionary function exception was designed to shield."  *Id.*  As the purpose of the exception "is to prevent judicial 'second-guessing' of ... decisions grounded in social, economic, and political policy ... the exception protects only governmental actions and decisions based on considerations of public policy."  *Id.* at 323; *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 (3d Cir. 2012).  The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions

taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325; *Abunabba*, 676 F.3d at 333.

"Even if the government can show that both parts of the discretionary function exception apply, there is an additional step." *Thieme v. United States*, No. CV 21-682 (RMB-AMD), 2023 WL 8271766, at *3 (D.N.J. Nov. 30, 2023); *see also Xi*, 68 F.4th at 838–40. A court must also determine whether the exercise of discretion "plausibly" violated the Constitution. *Xi*, 68 F.4th at 838–40. As the Third Circuit has explained, "conduct cannot be discretionary if it violates the Constitution" because federal "officials do not possess discretion to violate constitutional rights." *Id.* at 838–39 (quoting *U.S. Fid. & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988)). Although a plaintiff bears the burden of showing that their claims fall within the scope of the FTCA's waiver, the Government bears the burden of establishing that the discretionary function exception applies. *Abunabba*, 676 F.3d at 333. Thus, "[a]t the motion-to-dismiss stage, all a plaintiff must do to negate the discretionary function exception is plausibly allege a constitutional violation." *Xi*, 68 F.4th at 840.

Plaintiff concedes that the discretionary function exception applies to the BOP's housing, testing, and quarantining policies during his imprisonment at Fort Dix during the pandemic of Fall 2020, but argues that Individual Defendants R. Robinson, T. Jones, and M. Castellanos violated his Eighth Amendment right to be free from cruel and unusual punishment. *See* [Pl.'s Opp. Br., at 3 (ceding inapplicability of discretionary function exception as "moot" in light of *Thieme v. United States*, No. CV 21-682 (RMB-AMD), 2025

21

WL 2490526 (D.N.J. Aug. 29, 2025), but stressing that Individual Defendants' "active cruelty" otherwise disables application).[16]  The Court disagrees.

"The Eighth Amendment 'prohibits any punishment which violates civilized standards and concepts of humanity and decency.'"  *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992)).  The Supreme Court has interpreted this prohibition as "impos[ing] affirmative duties on prison officials 'to provide humane conditions of confinement.'"  *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  "To sufficiently allege prison officials violated his Eighth Amendment rights by imposing inhumane conditions, [Plaintiff's] complaint had to allege facts showing (1) the deprivation he endured was 'sufficiently serious,' and (2) the prison officials had 'a sufficiently culpable state of mind.'"  *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022) (quoting *Thomas*, 948 F.3d at 138).

The deprivation element is adequately pleaded when the allegations depict conditions where the inmate is denied "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).  The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  Showing a substantial risk of harm is a less demanding standard than alleging conditions posing "a probable risk of harm." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Van Hunter v. Schullery*, No. CV 24-2139 (KMW) (EAP), 2025 WL 1180385, at *8 (D.N.J. Apr. 23, 2025).

---

[16] The Government underscores Plaintiff's concession, noting that its evidence marshalled instantly is that used "in other Covid-19 challenges under the FTCA and are re-filing them here because they concern the same facility and the same time period." [Defs. Br., at 16 n.11.]

The second element is subjective and requires an inmate to sufficiently plead prison officials acted with deliberate indifference. *Farmer*, 511 U.S. at 834 (citations omitted). Deliberate indifference is effectively alleged where an inmate shows officials knew of, but disregarded, that the prison conditions posed "an excessive risk to inmate health and safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001); *see Jones v. Ellis*, 2021 WL 5015921, at *3 (D.N.J. Oct. 28, 2021) ("Thus, a detainee asserting deliberate indifference based on exposure to COVID-19 must … establish that the Defendant had the requisite mental state, which is akin to recklessness.").

Plaintiff's couple-three conclusory allegations are bereft of factual matter to find that these Individual Defendants plausibly violated his Eighth Amendment rights. Assuming the objective prong is met, *see Thieme*, 2023 WL 8271766, at *7 (finding COVID-19 presented a pronounced substantial risk of serious harm at FCI Fort Dix), Plaintiff does not sufficiently plead deliberate indifference. What we encounter is more so a dog chasing its tail. Individual Defendants exhibited deliberate indifference by: "actively preventing [Plaintiff] from social distancing by preventing him from moving to an open bed"; "maliciously refusing to allow [Plaintiff] to move to an open bunk"; "ignor[ing] or den[ying]" his requests to move. [Compl., at 3; Am. Compl., at 3; Second Am. Compl., ¶ 3.] These are "bald assertions" and "legal conclusions" the Court need not credit. *Evancho*, 423 F.3d at 351.

The sole factual averment that adds a *shade* of color is that Individual Defendants allegedly "assigned another inmate to the open bunk to prevent [Plaintiff] from sleeping there …." [Am. Compl., at 3.] But the Court is left to woolgather at the near-infinite explanations and motivations behind the Individual Defendants' decision to do so. The Court is a liberal constructor, not a claim whisperer. Plaintiff's meager and speculative allegations are a far cry

23

from plausibly pleading deliberate indifference. Resultantly, Plaintiff has not plausibly pleaded a violation of the Eighth Amendment that renders the discretionary function exception inapplicable to his FTCA claim. The Court would thus alternatively dismiss this claim without prejudice for lack of jurisdiction on this basis. *N.J. Physicians, Inc.*, 653 F.3d at 241 n.8.

### 4. Plaintiff's Alleged Exposure to Mold and Unknown Chemicals

Plaintiff alleges "constant exposure to mold and water that is contaminated with some unknown chemical(s)." [Second Am. Compl., ¶ 4.] Plaintiff seeks $7,795,000.[17] [*Id.*] On July 12, 2023, the BOP received Plaintiff's SF-95 form specifically asserting as the basis of the claim exposure to "PFOS and PFOA chemicals introduced to the ground water supply by the United States Government." [Dobovich Decl., Ex. 6, at 1.] The BOP subsequently issued a denial letter on December 27, 2023. [*Id.*, Ex. 7.] The Government posits that Plaintiff has not administratively exhausted this claim, thereby depriving the Court of jurisdiction. [Defs.' Br., at 9–11.]

Based on the SF-95 form, the Court preliminarily agrees with the Government that "there is no administrative tort claim filed by Plaintiff alleging exposure to mold." [*Id.*, ¶ 8 & Ex. 6.] Said another way, Plaintiff did not provide the BOP sufficient notice of alleged mold exposure for FTCA exhaustion. While "the FTCA does not require that the claimant's notice present every theory of liability, …the claimant's submission must, at least, 'give[ ] the agency written notice of his or her claim sufficient to enable the agency to investigate.'" *Hause v.*

---

[17] As footnoted earlier, Plaintiff's claim is capped to the $4.5 million asked for in the SF-95. [Dobovich Decl., Ex. 6, at 1.] To the extent that any additional damages for ongoing harm are permissible under the newly-discovered evidence exception, such an inquiry is mooted for failure to exhaust, as explained.

*United States*, 378 F. App'x 158, 159 (3d Cir. 2010) (quoting *Roma v. United States*, 344 F.3d 352, 362–63 (3d Cir. 2003)).  "This is not a high bar," simply requiring "minimal notice", but Plaintiff here has "present[ed] one claim to the agency and [is] maintain[ing] suit on the basis of a different set of facts."  *Freeman*, 158 F.4th at 177–78 & nn.49, 54 (first quoting *Tucker v. United States Postal Serv.*, 676 F.2d 954, 658–59 (3d Cir. 1982)); and then quoting *Roma*, 344 F.3d at 362).  The BOP had no reason "to investigate" mold exposure because Plaintiff never complained of it in the SF-95 form.  *See* [Dobovich Decl., Ex. 6.]  Plaintiff must first administratively exhaust his mold-exposure claim before properly invoking this Court's FTCA jurisdiction thereover.  *Shelton*, 775 F.3d at 569.  He has not.  Thus, this particular claim is dismissed without prejudice.

Plaintiff's other alleged exposure to "unknown chemical(s)" is similarly unexhausted. The SF-95 could not be clearer: "Claimant exposed to and forced to consume toxic *PFOS* and *PFOA* chemicals introduced to the ground water supply by the United States."  [Dobovich Decl., Ex. 6, at 1 (emphasis added).]  The SF-95 tellingly goes on that "these chemicals are *known* to be deadly and cause a myriad of deadly maladies."  [*Id.* (emphasis added).]  After BOP denied this administrative claim, Plaintiff now attempts to bring an FTCA claim for exposure to "unknown chemical(s)."  [Second Am. Compl., ¶ 4.]  No can do.  By so filing a PFOS- and PFOA-based claim, Plaintiff implicitly acknowledges that he can differentiate and identify such toxins from others, whether known or "unknown".  A prisoner to his own apparent hydrologic expertise, Plaintiff is once more "present[ing] one claim to the agency and then maintain[ing] suit on the basis of a different set of facts."  *Freeman*, 158 F.4th at 178. Bootstrapping, he cannot do.  If Plaintiff believes he has been exposed to mold and unknown chemicals, then he must first bring administrative claims before the BOP.  He has not.

Therefore, these claims are dismissed without prejudice for want of jurisdiction.  *N.J. Physicians, Inc.*, 653 F.3d at 241 n.8.

### 5.  Plaintiff's Alleged Stairway Fall

Plaintiff alleges that he "lost consciousness on the stairs" and was "hospitalized" because BOP officials "refused to alter [his] third floor bunk assignment."  [Second Am. Compl., ¶ 6.]  Plaintiff purportedly sustained injuries to his head and spine and now suffers from bathmophobia, or a fear of stairs.  [*Id.*]  Plaintiff presently seeks $5,000,000 from the Government.  [*Id.*]  The Government triply argues for dismissal on the grounds of: (1) administrative non-exhaustion; (2) the discretionary function exception; and (3) Plaintiff's failure to otherwise state a claim.  [Defs.' Br., at 11–12, 16–17, 24–25.]

The Court will begin with the discretionary function exception.  Firstly, "[i]t is well-established that BOP housing and cellmate assignments are discretionary functions exempted from FTCA liability."  *McAteer v. United States*, No. CV 23-1335, 2024 WL 3967488, at *4 (E.D. Pa. Aug. 28, 2024) (citing *Rinaldi v. United States*, 904 F.3d 257, 273 (3d Cir. 2018) ("join[ing]" First, Sixth, Seventh, Eighth, and Eleventh Courts of Appeals in so finding)).  The *Rinaldi* court specifically held that "housing and cellmate assignments unquestionably involve an 'element of judgment or choice,' for while BOP officials must 'provide suitable quarters' and 'provide for the protection, instruction, and discipline of all' of its inmates, neither that provision nor any other 'federal statute, regulation or policy' can be said to 'specifically prescribe[ ] a course of action' for such assignments that BOP officials must follow."  904 F.3d at 274 (first quoting *Gaubert*, 499 U.S. at 322; then quoting 18 U.S.C. § 4042(a)(2)–(3); and then quoting *Mitchell v. United States*, 225 F.3d 361, 363 (3d Cir. 2000)).

26

Housing assignments are then unequivocally "of the kind that the discretionary function exception was designed to shield." *Id.* (quoting *Mitchell*, 225 F.3d at 362). "And the Third Circuit has also made clear that the first part of the discretionary function test is generally satisfied even where officials house an inmate in a place that exposes him to a heightened and foreseeable risk of injury." *Daniels v. United States*, No. 23-CV-04572 (MEF) (CLW), 2025 WL 1884885, at *5 (D.N.J. July 7, 2025) (citing *id.* at 262–63, 272–74). The Court sees no reason to disturb "the overwhelming weight of federal law", *see id.* at *5 (collecting cases), in finding, at the first step, that the BOP's third-floor bunking decision in this case "involve[d] an element of judgment or choice." *Gaubert*, 499 U.S. at 322.

*Rinaldi* is also conclusively instructive at step two, reasoning that federal prison housing assignments depend upon policy judgments regarding institutional order, discipline, and security. *See Rinaldi*, 904 F.3d at 273–74 (first quoting *Rhodes v. Chapman*, 452 U.S. 337, 350 (1981); and then quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). "Other courts of appeals have reached similar conclusions." *See Daniels*, 2025 WL 1884885, at *5 (collecting cases from First, Fifth, Eighth, and Eleventh Circuits). This Court has no trouble concluding, all the more because Plaintiff offers no rebuttal on this issue, *see* [Pl.'s Opp. Br.], that his housing assignment was "of the kind that the discretionary function exception was designed to shield." *Mitchell*, 225 F.3d at 363; *see cf. Daniels*, 2025 WL 1884885, at *6 (dismissing FTCA claim that "prison employees assigned [plaintiff] to a cell in the Special Housing Unit, and he fell while moving from his bunk to his wheelchair" because of discretionary function exception).

But did it plausibly violate the Constitution? The Court finds not. Plaintiff's allegation is but a mere sentence: BOP personnel were deliberately indifferent because each "saw" that

Plaintiff was "clearly too weak and dizzy to walk" but "refused to assign" him "the available open bunk on the first floor." [Pl.'s Opp. Br., at 9.] Such factual paucity is far too insufficient "to raise a right to relief above the speculative level."[18] *Twombly*, 550 U.S. at 555. Finding no plausible Eighth Amendment violation, the discretionary function exception applies to Plaintiff's stairway-fall FTCA claim, divesting the Court of jurisdiction to adjudicate it. It is therefore dismissed without prejudice.[19] *N.J. Physicians, Inc.*, 653 F.3d at 241 n.8.

### B. Plaintiff's Allergy and Religious Diet Claims

Finally, Plaintiff generally seeks to hold Defendants liable under numerous legal theories for failing to provide him an allergen-free diet that comports with his religious beliefs. [Second Am. Compl., ¶ 5.] Plaintiff appears to bring claims under *Bivens*, the FTCA, RLUIPA, and also requests declaratory and equitable relief. [*Id.*]

---

[18] As noted before, Plaintiff unexplainedly references affidavits and leaves it to the Court to cobble together his claim. [Pl.'s Opp. Br., at 9.] It isn't for the Court to dissect Plaintiff's voluminous findings in search of a plausible entitlement to relief; that is his responsibility as a federal plaintiff. *See Est. of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) ("[W]e cannot fault the District Court for failing to intuit the necessary factual allegations from one of the many exhibits appended to the complaint."); *RD Legal Funding, LLC v. Barry A. Cohen, P.A.*, No. 13-77, 2013 WL 1338309, at *2 (D.N.J. Apr. 1, 2013) ("Plaintiff cannot meet its pleading requirements under Rule 8(a) by attaching numerous exhibits to its Complaint."). Nor does Plaintiff's *pro se* status excuse him from these pleading obligations. *Thakar*, 372 F. App'x at 328.

[19] As a result, the Court will sidestep the Government's alternative ground of non-exhaustion. Here, the Government argues for non-exhaustion because Plaintiff instituted this action or, alternatively, filed the Second Amended Complaint *before* the BOP denied his administrative tort claim. [Defs.' Br., at 11–12.] Although true, and while it does appear that the Supreme Court announced what is in effect a zero-tolerance bar on prematurely-filed FTCA claims in *McNeil v. United States*, 508 U.S. 106 (1993), regardless of, say, subsequent administrative exhaustion in the course of litigation as happened here, the Government's brief is underdeveloped on the effect of *McNeil* on this precise procedural posture. And the Court is further uneased by the Government's failure to address the very real ramification of its position that Plaintiff would then have failed to initiate his claim "within six months after the date of mailing," thus time-barring it "forever", absent equitable tolling. 28 U.S.C. § 2401(b).

As a preliminary matter, the Court is satisfied with Defendants' second supplemental report concerning Plaintiff's medical treatment for allergies or inadequate nutrition. *See* [Docket No. 69.] The Court divines nothing at this time from these materials or Plaintiff's response that would warrant mandatory preliminary injunctive relief or otherwise compel the Court to expedite review of these claims outside the regular course of litigation. Once more, Plaintiff's allegations are serious, but there is no sign of immediate and irreparable injury, loss, or damage that will occur, let alone the "higher standard of showing" required for "sparingly"-granted mandatory injunctive relief. *Sias v. Way*, No. CV 24-8747 (MAS) (RLS), 2024 WL 4505108, at *3 (D.N.J. Oct. 16, 2024) (first quoting *Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008); and then quoting *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976)). In fact, Plaintiff's recent filing from February 13, 2026, leaves the impression that he is simply dissatisfied with the amount of "sardines and tuna" that he must rely on for protein and "the total lack of variety of foods" he must endure. [Docket No. 79, at 1.] In other words, a gastronomic, perhaps not legal, disagreement. Plaintiff's requests for injunctive relief and the appointment of *pro bono* counsel are therefore denied. [Docket Nos. 64, 66.]

For its own part, what the Court is still dissatisfied with, however, is the factual basis for these claims such that a proper review of Defendants' motion is maintainable. The Second Amended Complaint is unhelpful and Plaintiff's allegations are strewn and haphazardly referenced across numerous filings, achieving, at best, a tenuous coherence. *See* [Docket Nos. 39, 41–42, 49, 54, 56, 64, 66, 74–76, 79; Second Am. Compl., ¶ 5.] Therefore, if Plaintiff wishes to pursue his claims, the Court will order Plaintiff to file another submission with "short and plain" statements clearly articulating: (1) each claim; (2) the specific Defendant(s)

29

against which it is asserted; (3) the specific relief sought; and (4) and, most importantly, the precise factual allegations supporting each claim—the who, what, where, when, why. FED. R. CIV. P. 8(a)(2).

Plaintiff is advised that the Court will **not** ferret through his pleadings going forward. This is Plaintiff's lawsuit. He is responsible for putting Defendants and the Court on adequate notice of his claims sufficient to sustain this litigation. **All supporting factual allegations for the claims relating to Plaintiff's nutrition and diet shall reside in the forthcoming submission**. Notwithstanding the postponed adjudication of this particular set of claims, Plaintiff's First and Eighth Amendment *Bivens* claims are susceptible to review, and are dismissed with prejudice for the reasons below.

### 1. *Bivens*

Plaintiff's First and Eighth Amendment *Bivens* claims, much like *Bivens* itself, are "dead on arrival." *Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023). In 1871, Congress enacted 42 U.S.C. § 1983, which created a private cause of action to redress violations of federal rights committed by state actors. But Congress has not created a similar cause of action to vindicate violations of federal rights by federal officers. Yet, the Supreme Court has, on occasion, found the Constitution to imply "a cause of action for damages against individual federal officers to redress violations of constitutional rights." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (citing *Bivens*, 403 U.S. at 397). In the eponymous *Bivens* decision, the "Supreme Court implied a cause of action against federal drug agents whose warrantless search of a home violated the Fourth Amendment." *Fisher v. Hollingsworth*, 115 F.4th 197, 203 (3d Cir. 2024).

30

The decade that followed saw the Supreme Court recognize two additional causes of action under the Constitution: first, for a congressional staffer's gender discrimination claim under the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228, 244 (1979), and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 19 (1980). "Since these cases, the Court has not implied additional causes of action under the Constitution." *Fisher*, 115 F.4th at 203; *see also Egbert v. Boule*, 596 U.S. 482, 486 (2022) ("Over the past 42 years, however, we have declined 11 times to imply a similar cause of action for other alleged constitutional violations."). Quite contrawise, "in recognition that separation of powers principles are central to the analysis, the Court has 'made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity.'" *Kalu*, 113 F.4th at 325 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)).

The Court nevertheless proceeds two-step to determine whether a *Bivens* remedy should be fashioned here. "First, we ask whether the 'case presents a new *Bivens* context'— *i.e.*, whether the 'case is different in a meaningful way from previous *Bivens* cases decided by' the Supreme Court." *Egbert*, 596 U.S. at 492 (quoting *Abbasi*, 582 U.S. at 139). "Only three cases serve as a benchmark: *Bivens*, *Davis*, and *Carlson*. 'And our understanding of a "new context" is broad.'" *Kalu*, 113 F.4th at 325 & n.6 (first citing *Abbasi*, 582 U.S. at 131; and then quoting *Hernández v. Mesa*, 589 U.S. 93, 102 (2020)). So broad in fact that "*Egbert* instructs us that 'almost parallel circumstances' are not sufficient." *Id.* (quoting *Egbert*, 596 U.S. at 495). While there is no "exhaustive list of differences that are meaningful enough to make a given context a new one," factors to be considered include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk

31

> of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. at 139–40. "If a case does not present a new *Bivens* context, the inquiry ends there, and a *Bivens* remedy is available." *Shorter v. United States*, 12 F.4th 366, 372 (3d Cir. 2021).

"Second, if a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (quoting *Abbasi*, 582 U.S. at 136). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernández*, 589 U.S. at 102); *see also Fisher*, 115 F.4th at 207 (citations omitted) ("Any special factor—even one—suffices to foreclose a new *Bivens* cause of action. If there is a single reason to pause, then we may not recognize a *Bivens* remedy."). The two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. Hence, for example, why "a court may not create a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure,'" *Abbasi*, 582 U.S. at 137, a "quintessential special factor," *Fisher*, 115 F.4th at 208.

Plaintiff's First Amendment *Bivens* claim, whether dressed up as retaliation or free exercise or both, is definitively foreclosed. The claim is firstly "meaningfully different" because it is brought under the First Amendment, a different "constitutional right at issue" than in *Bivens*, *Davis*, and *Carlson*. *See Kalu*, 113 F.4th at 327; *Egbert*, 596 U.S. at 498. This, "[b]y itself," ends the inquiry because "the 'uncertainty' that results from extending *Bivens* to

a new context 'forecloses relief.'  And '[t]he newness of [a] "new context" ... alone require[s] dismissal.'"  *Fisher*, 115 F.4th at 207 (citations omitted).

Likewise with Plaintiff's Eighth Amendment *Bivens* claim.  True, the Supreme Court implied such a remedy in *Passman*, but "a claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."  *Hernandez*, 589 U.S. at 103.  The refusal to provide allergen-free meals, as alleged instantly, is incontrovertibility distinct from where prison officials failed to provide emergency medical treatment to an inmate who had chronic asthma, causing the inmate's death, as at issue in *Passman*.  *See* 442 U.S. at 244.  Thus, the facts in *Passman* bear little relation to Plaintiff's allegations such that a new *Bivens* context arises.  *See, e.g.*, *Perez v. Merendino*, No. 23-23431 (GC) (TJB), 2025 WL 3771267, at *10 (D.N.J. Dec. 31, 2025) ("However, an Eighth Amendment nutrition claim presents a new context under the first step of the *Bivens* analysis."); *Kalu*, 113 F.4th at 325 (understanding new *Bivens* context so broadly that even "almost parallel circumstances" are insufficient).  This "uncertainty" once more "forecloses relief."  *Fisher*, 115 F.4th at 207.

Further, on step two, the *Egbert* court declared "that there is no *Bivens* action for First Amendment retaliation," 596 U.S. at 498, while the "Third Circuit has declined to recognize a First Amendment Free Exercise claim for monetary damages under *Bivens*, in part, because there is no need to imply a damages remedy where [the Religious Freedom Restoration Act] provides for such relief", *Singh v. Thompson*, No. CV 24-7641 (RMB-EAP), 2024 WL 4818771, at *4 (D.N.J. Nov. 18, 2024) (citing *Mack v. Warden Loretto FCI*, 839 F.3d 286, 304 (3d Cir. 2016)); *see also Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims.").  Indeed, among other causes of action, Plaintiff

33

is asserting a First Amendment claim under RLUIPA, which the Court will liberally construe as brought under RFRA.  [Second Am. Compl., ¶ 5.]  And this Court previously dismissed Plaintiff's Eighth Amendment *Bivens* claims because "[i]nmates in [his] position have full access to an alternative remedial mechanism established by the Executive Branch: the BOP's ARP."  *Kalu*, 113 F.4th at 332 (citation omitted); *see* [Docket No. 43, at 10.]  That reasoning remains in force.  For these reasons, the Court will dismiss Plaintiff's First and Eighth Amendment *Bivens* claims with prejudice.[20]

## IV.    CONCLUSION

Much has transpired in this case for this stage of litigation.  But judicial process has winnowed it down and burnished the Court's focus.  For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART**.

Plaintiff's claims brought under the Federal Tort Claims Act in paragraphs 1, 2, 3, 4, and 6 of the Second Amended Complaint are **DISMISSED WITHOUT PREJUDICE** for want of jurisdiction.

Plaintiff's First and Eighth Amendment *Bivens* claims in paragraph 5 of the Second Amended Complaint are **DISMISSED WITH PREJUDICE**.

With respect to Plaintiff's allergy- and religious diet-based claims in paragraph 5 of the Second Amended Complaint, Plaintiff's requests for preliminary injunctive relief and the appointment of *pro bono* counsel are **DENIED WITHOUT PREJUDICE**, but Defendants'

---

[20] The Court limited Plaintiff's leave to file a second amended complaint clarifying his claims to those "which [he] understands have not been dismissed by this Court."  [Docket No. 43, at 13.]  Despite this clear instruction, the Second Amended Complaint tries to "absorb" an equivocally-denied *Bivens* claim for the BOP's alleged failure to provide Plaintiff with medical work boots.  [*Id.*, at 10; Second Am. Compl., ¶ 6.]  That claim remains dismissed with prejudice, and would otherwise fail for the reasons above.

Motion to Dismiss is also **DENIED WITHOUT PREJUDICE** at this time.  The Court will reserve ruling on the FTCA, RFRA, and declaratory and equitable relief claims in paragraph 5 to allow Plaintiff to concretize them in a subsequent submission.  To that end, Plaintiff shall file within 30 days a submission, not to exceed 5 pages, that provides short and plain statements only clearly articulating: (1) each of these claims; (2) the specific Defendant(s) against which it is asserted; (3) the specific relief sought; and (4) and the precise factual allegations supporting each claim.  All supporting factual allegations for these claims shall be set forth in Plaintiff's submission.  The Court will not hunt through Plaintiff's other pleadings in search of claims and allegations.  If Plaintiff satisfies his obligation, then the Court will subsequently grant Defendants 45 days to respond.

An accompanying Order shall issue.

**February 27, 2026**                              **/s/ Renée Marie Bumb**
Date                                               RENÉE MARIE BUMB
                                                   Chief United States District Judge

35